UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| JAVARICE BURNELL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 9:23-CV-00102 |
| | § | |
| WILLIAM F. MILLER and | § | |
| STERLING SITE ACCESS SOLUTIONS, | § | |
| LLC, | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

COMES NOW Javarice Burnell ("Burnell" or "Plaintiff") and files his Original Complaint against William F. Miller ("Defendant Miller") and Sterling Site Access Solutions, LLC ("Defendant Sterling") (collectively, "Defendants") and respectfully represents and shows the Court the following:

**I.**
**NATURE OF THE CASE**

Plaintiff's claim arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII") and 42 U.S.C. § 1981. Defendant Miller is sued in his individual capacity as he violated 42 U.S.C. § 1981 by intentionally discriminating against Plaintiff on the basis of Plaintiff's race and, as Plaintiff's direct supervisor, causing the termination of Plaintiff's employment with Defendant Sterling. Defendant Sterling is sued in its capacity as Defendant Miller's employer for empowering and authorizing Defendant Miller to intentionally discriminate against Plaintiff. Defendant Sterling violated Title VII and 42 U.S.C. § 1981 by failing to put in place or enforce any anti-discrimination policies and procedures, and such failure resulted in

Defendant Miller's intentional discrimination against Plaintiff and Plaintiff's unlawful termination.

## II.
## PARTIES

1. Plaintiff Javarice Burnell is an individual resident of Miller County, Arkansas.

2. Defendant William F. Miller is an individual resident of Angelina County, Texas, and a former employee of Defendant Sterling. Defendant Miller may be served at his last known address, 2676 Knightwood Road, Huntington, Texas 75949, or wherever he may be found.

3. Defendant Sterling Access Solutions, LLC is an Illinois limited liability company authorized to transact business in the State of Texas. Defendant Sterling operates a manufacturing facility at South 7309 US Hwy. 69, Lufkin, Texas 75901. Defendant Sterling may be served through its registered agent, Incorp Services, Inc., at 815 Brazos St., Suite 500, Austin, TX 78701.

## III.
## JURISDICTION AND VENUE

4. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a civil action arising under federal law, Title VII and 42 U.S.C. § 1981.

5. Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b) because the Defendants reside in and all or a substantial part of the event or events or omissions giving rise to Plaintiff's claims occurred in Angelina County, Texas.

## IV.
## FACTUAL BACKGROUND

6. Plaintiff Javarice "BJ" Burnell is a 33-year-old Black male. Burnell began working for Defendant Sterling's Lufkin, Texas operations on or about November 23, 2020. Initially, Burnell worked as a Heavy Equipment Operator but was promoted to the position of Crew Leader after only three months of employment.

7. In the summer of 2021, Burnell was placed under the supervision of Defendant Miller, a 28-year-old White male and a Superintendent for Defendant Sterling's Lufkin operations. By placing Defendant Miller in the position of Burnell's supervisor, Defendant Sterling empowered and authorized Defendant Miller to make decisions and take actions that impacted the terms and conditions of Burnell's employment, such as approving Burnell's time off requests and terminating his employment.

8. Upon information and belief, Defendant Miller frequently and openly discussed his disdain for Black people with his non-Black colleagues, going so far as to self-identify as a racist person.

9. Upon information and belief, Defendant Miller regularly used reprehensible racist language to describe Burnell to his colleagues and sought to taint the opinions of Burnell's colleagues by referring to Burnell as a "lazy N-word," a "no good N-word," and a "grease monkey," while also opining that Burnell "isn't worth a f***." Upon information and belief, before Defendant Miller became Burnell's supervisor, Defendant Miller complained about Burnell to other employees and told a now-former employee of Defendant Sterling that he "hated" Burnell and "wanted him gone."

10. Defendant Miller's racism towards Black persons extended beyond Burnell. When a hiring need arose shortly after Defendant Miller became Burnell's supervisor, Burnell recommended to Defendant Miller that he rehire two well-qualified Black individuals who were previously employed by Defendant Sterling. The two Black individuals Burnell recommended were laid off due to a lack of work but were classified as eligible for rehire as the layoff was due to no fault of their own. Defendant Miller ignored Burnell's recommendation and instead pushed

Defendant Sterling to rehire two former White employees who previously quit their jobs for Defendant Sterling and should have been on a "do not rehire list."

11. Upon information and belief, Defendant Miller's racist conduct was ongoing, open, and notorious in front of his non-Black colleagues. Although he did not spew his racist insults and vulgarities directly at Burnell, he treated Burnell with disdain. Burnell perceived Defendant Miller to be concerned that Burnell wanted Defendant Miller's job as Superintendent—which Burnell did not want and even conveyed to Defendant Miller that he did not want—and Defendant Miller frequently spoke about his desire to "get rid of" Burnell.

12. Defendant Miller's reprehensible use of racial slurs and attempts to influence the opinions of Burnell's colleagues were not the only basis by which Defendant Miller targeted Burnell. On or about June 1, 2022, Burnell was approved to take one week of paternity leave after the birth of his child. Approximately three days into Burnell's approved paternity leave, Defendant Miller called Burnell and demanded Burnell appear for work the following day in Marble Falls, Texas. Defendant Miller threatened that if Burnell did not come to work, he would "need to find somewhere else to work." Burnell feared that the loss of his income would have been devastating for his family–that now included a newborn baby–and returned to work the next day as Defendant Miller demanded.

13. On or about August 23, 2022, Defendant Miller telephoned Burnell and terminated his employment with Defendant Sterling. This termination came as a shock to Burnell, as he had received a positive performance review and a raise shortly before his termination. Burnell was a hard worker, and project managers frequently requested that he be assigned to their projects. Additionally, Burnell was not subject to any disciplinary action during his years of employment with Defendant Sterling.

14. At the time of Burnell's termination, he was the only Black employee working out of Defendant's Lufkin location. Prior to his termination, Burnell supervised a crew that consisted of himself and three other non-Black employees. Burnell's crew was responsible for preparing areas adjacent to highways for the power company to install power lines and for performing clean-up and restoration work after installation was complete.

15. During his termination call to Burnell, Defendant Miller told Burnell that he was being terminated because Burnell recently "left road signs out" at a job site and that "no one liked" him. On the job in question, Burnell assigned a colleague to pick up the road signs. After receiving Defendant Miller's termination call, Burnell confirmed with several colleagues that road signs were not left at a job site, and this purported reason for the termination of Burnell's employment had no basis in fact. Burnell then sent a text message to Defendant Miller to acknowledge and confirm the reasons Defendant Miller gave him for his termination during their telephone call. Defendant Miller never responded to Burnell's text message.

16. Even if road signs had been left at the job site, Defendant Sterling did not have a formal policy against leaving road signs at a job site. A number of Defendant Sterling's non-Black employees at the Lufkin office have left signs out at job sites and were neither disciplined nor terminated as a result. Upon information and belief, Defendant Miller even had a habit of leaving road signs at job sites.

17. Defendant Miller's assertion that no one liked Burnell is similarly unfounded, as Burnell had never been disciplined or counseled regarding his performance or interactions with his colleagues. Burnell enjoyed good working relationships with his colleagues, despite Defendant Miller's attempts to smear him with vulgar and racist descriptors.

18. Defendant Miller did not have any objective, performance-based reasons to terminate Burnell's employment. Defendant Miller disliked Burnell because Burnell is a Black man that was good at his job and liked by his colleagues. To be clear, Defendant Miller terminated Burnell's employment for no reason other than he disliked Burnell, and he disliked Burnell because Burnell is Black.

19. Defendant Miller's proffered reasons for Burnell's termination are a pretext for unlawful discrimination. Defendant Miller's actions after terminating Burnell demonstrate such pretext. Upon information and belief, Defendant Miller knew that he did not have any legitimate basis by which to terminate Burnell and, after terminating Burnell, asked a colleague whether that colleague would "have his back" if Burnell "comes for me."

20. A typewritten Employee Termination Request form was completed by Defendant Miller or Defendant Sterling in connection with Burnell's termination. This form suggests Defendant Miller was not required to consult with or obtain approval from Defendant Sterling's human resources department before terminating Burnell's employment, as the space for "Date HR Received Document" was left undated. This form indicates Burnell was terminated for "Performance" related reasons, as indicated by the box for "Performance" being checked instead of the other options, such as "Absenteeism," "Tardiness," "Insubordination," "Misconduct," "Lay off," or "Other." No portion of this form required Defendant Miller to explain or justify Burnell's "Performance" issues or any other basis for his termination.

21. Further, this form suggests that the sole "check and balance" on Defendant Miller's power to terminate Burnell's employment for any reason he deemed appropriate was the approval of Defendant Sterling's regional manager, Scott Nance, as Mr. Nance is listed on the form as having approved Burnell's termination form – although it is not clear whether such approval was obtained

before or after Defendant Miller called Burnell to terminatehis employment. Upon information and belief, Defendant Miller and Mr. Nance have had a personal friendship that extends beyond their work for Defendant Sterling. Mr. Nance routinely permitted Defendant Miller to run the Lufkin operations with little oversight or intervention.

22. Defendant Sterling failed to put in place any policies or procedures that would have prevented Defendant Miller's unlawful termination, such as requiring Defendant Miller to provide proof of his proffered reasons for terminating Burnell to a disinterested party, such as human resources or upper management in Illinois, engaging others in the termination decision, or providing a process by which Burnell could defend himself against Defendant Miller's baseless allegations as to his performance and likeability. Following Burnell's termination, Burnell spoke with Defendant Sterling's CEO, Carter Sterling, who told Burnell that he "trusted" Defendant Miller's judgment. Defendant Sterling is liable for its role in employing Defendant Miller, an overt racist, giving him the unfettered authority to terminate the employment of its employees, and permitting him to use that authority to target Burnell.

23. Instead of investigating and terminating Defendant Miller for his conduct, Defendant Sterling later attempted to cover-up Burnell's unlawful termination. After Burnell filed a Charge of Discrimination with the Equal Opportunity Employment Commission ("EEOC"), Defendant Sterling drummed up a disingenuous justification for Burnell's termination. In response to Burnell's Charge of Discrimination, Defendant Sterling submitted a Position Statement that asserted Burnell "was terminated for performance reasons as determined by his direct manager, Mr. Will Miller, after receipt by [Defendant Sterling] of customer complaints about [Burnell's] performance of a project for the customer." As evidence of these "performance reasons," Defendant Sterling attached to its Position Statement an email from a third-party that was sent to

Defendant Sterling *ten months prior* to Burnell's termination. Setting aside the credibility of relying on such a complaint given the ten-month delay in acting on it, Defendant Miller never referenced this email, customer complaints, or any other generic claim about Burnell's performance when he terminated Burnell. Instead, Miller asserted a provably false and specific claim concerning road signs being left at a job site and also claimed that Burnell's colleagues did not like him.

24. On or about January 23, 2023, twelve days after Burnell filed his Charge of Discrimination with the EEOC, Defendant Sterling terminated Defendant Miller's employment. However, Defendant Miller was not terminated because of his actions in unlawfully discriminating against Burnell. Rather, Defendant Sterling claimed that it terminated Defendant Miller due to a lack of work at the Lufkin facility.

## V.
### EXHAUSTION OF ADMINISTRATIVE REMEDIES

25. On January 11, 2023, Burnell filed a timely Charge of Discrimination with the EEOC.[1]

26. Burnell received a Notice of Right to Sue (the "Notice") on May 4, 2023, authorizing Burnell to file this Original Complaint prior to the expiration of the ninety-day deadline.[2]

27. The ninety-day deadline is August 2, 2023, and this Original Complaint has been filed prior to the expiration of the deadline.

## VI.
### CAUSES OF ACTION

---

[1] A true and correct copy of Plaintiff's Charge of Discrimination is attached hereto and incorporated herein as Exhibit A.
[2] A true and correct copy of Plaintiff's Notice of Right to Sue is attached hereto and incorporated herein as Exhibit B.

**COUNT I: Race Discrimination in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq* (as to Defendant Sterling)**

28. Plaintiff incorporates by reference all facts set forth in the preceding paragraphs.

29. At all relevant times, Plaintiff was an employee of Defendant Sterling within the meaning of Title VII.

30. Plaintiff is Black (African-American), and as such, he belongs to a class protected under the statute.

31. At all relevant times, Plaintiff was qualified for the position he held with Defendant Sterling as Crew Leader.

32. Defendant Sterling employed Defendant Miller, placed him in a supervisory capacity over Plaintiff, and gave Defendant Miller the power to take tangible employment actions against Plaintiff, such as terminating Plaintiff's employment. At all times relevant to this cause of action, Defendant Miller was employed by and acted as an agent of his employer and principal, Defendant Sterling.

33. Defendant Sterling, through its agent/supervisor/employee Defendant Miller, violated Title VII by intentionally discriminating against Plaintiff. Defendant Miller, under the authority granted to him by Defendant Sterling, terminated Plaintiff's employment because Plaintiff is Black.

34. Defendant Sterling, through its agent/supervisor/employee Defendant Miller, intentionally discriminated against Plaintiff, which led to the loss and impairment of the wages, benefits, promotions, privileges, and terms and conditions of Plaintiff's employment.

35. Further, Defendant Sterling failed to supervise Defendant Miller or restrain his authority in a manner that would have ensured compliance with federal law and prevented Defendant Miller's intentional discrimination against Plaintiff. Defendant Sterling failed to put in

place an appropriate system of checks and balances that would have required Defendant Miller to substantiate his purported nondiscriminatory basis for terminating Plaintiff or expose that Defendant Miller lacked any nondiscriminatory reason for terminating Plaintiff's employment.

36. The above-described acts on Defendant Sterling's part caused Plaintiff substantial injury and damage.

37. Defendant Sterling's unlawful discrimination practices violate Title VII, and Plaintiff is entitled to recover monetary damages from Defendant Sterling for back pay, front pay, lost benefits, future pecuniary losses, and compensatory damages, including emotional pain and suffering, inconvenience, loss of enjoyment of life, and other nonpecuniary losses. Plaintiff is now suffering and will continue to suffer future pecuniary losses, emotional pain and suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. These irreparable injuries and monetary damages are the results of Defendant Sterling's intentional discrimination. Plaintiff's damages will continue unless and until this Court grants relief.

38. Defendant Miller's intentional discrimination was committed with malice and reckless indifference to the rights of Plaintiff. As Defendant Miller's employer and principal, Defendant Sterling is liable for Defendant Miller's intentional discrimination. Further, Defendant Sterling is liable for its own failures in that Defendant Sterling did not put in place and/or enforce any policies and procedures that would demonstrate a good faith effort to comply with Title VII and prevent unlawful discrimination in the workplace. Accordingly, Plaintiff is entitled to punitive damages as a result of Defendants' willful and/or reckless disregard for Plaintiff's protected rights.

### COUNT II: Intentional Discrimination in Violation of 42 U.S.C. § 1981 (as to Defendant Sterling)

39. Plaintiff incorporates by reference all facts set forth in the preceding paragraphs.

40. At all relevant times, Plaintiff was an employee of Defendant Sterling.

41. Plaintiff is Black (African-American), and as such, he belongs to a class protected under the statute.

42. At all relevant times, Plaintiff was qualified for the position he held with Defendant Sterling as Crew Leader.

43. Defendant Sterling employed Defendant Miller, placed him in a supervisory capacity over Plaintiff, and gave Defendant Miller the power to take tangible employment actions against Burnell, such as terminating Plaintiff's employment with Defendant Sterling. At all times relevant to this cause of action, Defendant Miller was employed by and acted as an agent of his employer and principal, Defendant Sterling.

44. Defendant Sterling, through its agent/supervisor/employee Defendant Miller, violated 42 U.S.C. §1981 by intentionally discriminating against Plaintiff. Defendant Miller, under the authority granted to him by Defendant Sterling, terminated Plaintiff's employment because Plaintiff is Black.

45. Defendant Sterling, through its agent/supervisor/employee Defendant Miller, intentionally discriminated against Plaintiff, which led to the loss and impairment of the wages, benefits, promotions, privileges, and terms and conditions of Plaintiff's employment.

46. Further, Defendant Sterling failed to supervise Defendant Miller or restrain his authority in a manner that would have ensured compliance with federal law and prevented Defendant Miller's intentional discrimination against Plaintiff. Defendant Sterling failed to put in place an appropriate system of checks and balances that would have required Defendant Miller to substantiate his purported nondiscriminatory basis for terminating Plaintiff or expose that Defendant Miller lacked any nondiscriminatory reason for terminating Plaintiff's employment.

47. The above-described acts on Defendant Sterling's part caused Plaintiff substantial injury and damage.

48. Defendant Sterling's unlawful discrimination practices violate 42 U.S.C. §1981, and Plaintiff is entitled to recover monetary damages from Defendant Sterling for back pay, front pay, lost benefits, future pecuniary losses, and compensatory damages, including emotional pain and suffering, inconvenience, loss of enjoyment of life, and other nonpecuniary losses. Plaintiff is now suffering and will continue to suffer future pecuniary losses, emotional pain and suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. These irreparable injuries and monetary damages are the results of Defendant Sterling's intentional discrimination. Plaintiff's damages will continue unless and until this Court grants relief.

49. Defendant Miller's intentional discrimination was committed with malice and reckless indifference to the rights of Plaintiff. As Defendant Miller's employer and principal, Defendant Sterling is liable for Defendant Miller's intentional discrimination. Further, Defendant Sterling is liable for its own failures in that Defendant Sterling did not put in place and/or enforce any policies and procedures that would demonstrate a good faith effort to comply with 42 U.S.C. §1981. Accordingly, Plaintiff is entitled to punitive damages as a result of Defendants' willful and/or reckless disregard for Plaintiff's protected rights.

### COUNT III: Intentional Discrimination in Violation of 42 U.S.C. § 1981 (as to Defendant Miller in his individual capacity)

50. Plaintiff incorporates by reference all facts set forth in the preceding paragraphs.

51. At all relevant times, Defendant Miller was employed by Defendant Sterling as a Superintendent.

52. At all relevant times, Defendant Miller served as Plaintiff's supervisor and had the power and authority to take tangible employment actions against Plaintiff, such as terminating Plaintiff's employment with Defendant Sterling.

53. Defendant Miller violated 42 U.S.C. §1981 by intentionally discriminating against Plaintiff. Defendant Miller, under the authority granted to him by Defendant Sterling, terminated Plaintiff's employment because Plaintiff is Black.

54. Defendant Miller intentionally discriminated against Plaintiff, which caused Plaintiff substantial injury and damage, including the loss and impairment of the wages, benefits, promotions, privileges, and terms and conditions of Plaintiff's employment with Defendant Sterling.

55. Defendant Miller's unlawful discrimination practices violate 42 U.S.C. §1981, and Plaintiff is entitled to recover monetary damages from Defendant Miller for back pay, front pay, lost benefits, future pecuniary losses, and compensatory damages, including emotional pain and suffering, inconvenience, loss of enjoyment of life, and other nonpecuniary losses. Plaintiff is now suffering and will continue to suffer future pecuniary losses, emotional pain and suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. These irreparable injuries and monetary damages are the results of Defendant Miller's intentional discrimination. Plaintiff's damages will continue unless and until this Court grants relief.

56. Defendant Miller's intentional discrimination was committed with malice and reckless indifference to the rights of Plaintiff. Accordingly, Plaintiff is entitled to punitive damages.

## VII.
## ATTORNEYS' FEES

57. As a result of Defendants' actions, Plaintiff is authorized to recover attorneys' fees and costs on his claims.

## VIII.
## CONDITIONS PRECEDENT

58. All conditions precedent have been performed and/or have occurred.

## IX.
## JURY DEMAND

59. Plaintiff requests a trial by jury with respect to all claims so triable.

## X.
## RELIEF SOUGHT AND PRAYER

WHEREFORE, Plaintiff Javarice Burnell respectfully seeks the following relief:

(i)　　judgment be entered for Plaintiff against Defendants for actual damages including but not limited to pecuniary losses, nonpecuniary losses, back pay (including reimbursement for lost insurance and all other benefits), front pay (including reimbursement for lost insurance and all other benefits), and compensatory damages;

(ii)　　past, current, and future mental anguish damages;

(iii)　　punitive damages;

(iv)　　pre-judgment and post-judgment interest;

(v)　　attorneys' fees;

(vi)　　court costs; and

(vii)　　any other or further relief to which Plaintiff is legally or equitably entitled.

Dated: June 22, 2023  Respectfully submitted,

By: */s/ Justin V. Sumner*
**Justin V. Sumner** (Lead Attorney)
State Bar No. 24063022
E-Mail: jsumner@sumnerschick.com
**Amanda Bridson**
State Bar No. 24092172
E-Mail: bridson@sumnerschick.com
**Nicole Ward**
State Bar No. 24106551
E-Mail: nward@sumnerschick.com

Sumner Schick, LLP
3006 Cole Avenue
Dallas, Texas 75204
(214) 965-9229

**ATTORNEYS FOR PLAINTIFF**